## Foulk *v.* Albert, Appellant.

194

Argued November 21, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Thomas C. Moore,* with him *J. Dallas Shepherd,* for appellants.

*Anthony C. Falvello,* with him *Rocco C. Falvello, Fredric R. Gallagher,* and *William J. Fahey,* for appellees.

OPINION PER CURIAM, December 29, 1956:

The decree of the Court below is affirmed on the following excerpts from the adjudication and opinion of President Judge VALENTINE:

"This case involves the validity of a tax sale of plaintiffs' personal property, which was assessed and sold as real estate.

"The jurisdiction of equity was sustained by Judge FLANNERY in opinion filed March 9th, 1955 (45 Luzerne 149).

"The buildings involved, viz., a cinder processing plant, a frame dwelling, a frame building and a garage

were erected upon real estate owned by the Pennsylvania Power & Light Company.

"For the years 1950, 1951 and 1952, these buildings were assessed in the name of 'T. F. Steele Coal Company.' In 1953, the assessment was changed to 'E. Miller Co., P. P. & L. Co., co-owner, c/o Curtis Rodgers, Harwood Mines, Hazle Township.'

"The buildings were exposed for sale for the non-payment of taxes for the year 1950, and due to the fact that no bids were received were acquired by the County of Luzerne.

"The T. F. Steele Coal Company was in no way connected with plaintiffs' operation at Harwood. It never owned, leased or occupied the premises, nor was it, at any time, plaintiffs' agent or representative.

"The plaintiffs, trading as H. Hessey Miller, began the operation of the cinder processing plant at Harwood in 1946. Since that time plaintiffs' foreman and his family have occupied the dwelling house erected at said operation.

"H. Hessey Miller was a trade name adopted in April, 1943, by a partnership consisting of H. Hessey Miller, Dorothea B. Miller, Helena Foulke, Kirk Foulke and William G. Bower, for the purpose of buying, selling and dealing in cinder and cinder products. The address or office of the partnership was Front and Franklin Streets, Chester, Pa.

"The Millers withdrew from the partnership in February, 1944, and duly filed certificates to that effect.

"Thereafter the three plaintiffs continued the partnership under the trade name of 'H. Hessey Miller' and established the cinder plant at Harwood, Luzerne County.

"On June 23rd, 1953, one of the plaintiffs, William G. Bower, wrote the Tax Claim Bureau requesting a bill for any taxes due from the plaintiffs. This letter was upon stationery which set forth 'Kirk Foulke, Helena Foulke and William G. Bower, trading as H. Hessey Miller, Delaware Ave., and Flower St., Chester, Pa.'

"In response to this letter, the Tax Claim Bureau wrote Bower, under date of August 13th, 1953, enclosing a statement of taxes due from the T. F. Steele Coal Company, not indicating what, if any, taxes were due from the plaintiffs, trading as H. Hessey Miller.

"Thereafter, on November 5th, 1953, the Tax Claim Bureau petitioned to sell the property, free and clear from all taxes, liens, etc.

"The rule to show cause why such sale should not be authorized was served by the Sheriff of Delaware County, deputized by the Sheriff of Luzerne County on H. Hessey Miller at Middletown Road, Middletown Township, Delaware County, Pa., but no service was made upon any of the plaintiffs, trading as H. Hessey Miller, nor any of their authorized agents.

"H. Hessey Miller never had an interest in plaintiffs' operation at Harwood, and neither his name or the place of the service of the rule upon him appeared either in the files of the Tax Claim Bureau or the Assessors Office.

"At the time of the service of the rule upon H. Hessey Miller, the plaintiffs were involved in litigation with him over his right to engage in competition with them. (See Foulke v. Miller, 381 Pa. 587.)

"The Tax Claim Bureau file contained the street address of plaintiffs' office in Chester and also plaintiffs' address at the Harwood plant.

"On March 23rd, 1954, the property was allegedly sold at a free and clear tax sale to the defendant, Breakstone, for $66.55. Following this sale the Tax Claim Bureau delivered to Breakstone an alleged deed for the property. Thereafter Breakstone delivered an alleged quit-claim deed, transferring the property to the defendant, Albert.

"The case presents two controlling questions of law. First, the sufficiency of the assessment to support a tax sale of plaintiffs' property. Second, the legality of the service of the rule to show cause why the property should not be sold free and clear of all taxes and liens.

"The situation was stated by Judge FLANNERY in his opinion disposing of the preliminary objection as follows: 'Between the plaintiffs and the taxing authorities the processing plant will have all the attributes of real estate and may be sold for taxes. Between the owner and the defendants it is personal property.' (45 Luzerne, 149-151)

"The processing plant was never assessed in the name of plaintiffs. Taxes on the real estate, upon which plaintiffs' buildings had been erected, were duly paid by the owner, the Pennsylvania Power & Light Company.

"The T. F. Steele Coal Company, in which name the plaintiffs' property was assessed, was in no way connected with plaintiffs' operation, or the land upon which plaintiffs' buildings were erected.

"Under the circumstances we conclude that the assessment was invalid and insufficient to support a sale of the property for the non-payment of taxes. *Gordon v. Harley*, 165 Pa. Superior Ct. 433. As stated in the more recent case of *Luther v. Pa. Game Com.*, 381 Pa. 442, at page 445, 'The owner of real estate cannot have it taken away from him by the making of

an assessment in the name of somebody whose title is entirely spurious, which assessment gives no notice that the true owner's property is being assessed.'

"A tax sale, based on an assessment in the name of T. F. Steele Coal Company, for that which the Company never owned, possessed or occupied, can convey no title to property owned by the plaintiffs.

"We are also of the opinion that the service of the rule to show cause why a sale of the property in question should not be made free and clear of all taxes and liens upon H. Hessey Miller, who was at no time interested in the operation of the plaintiffs at Harwood, was a nullity. *Hess v. Westerwick*, 366 Pa. 90. Due process of law inhibits the taking of one man's property and giving it to another contrary to settled usage and modes of procedure and without notice or an opportunity for a hearing. *Hess v. Westerwick*, supra.

"The fact that the plaintiffs had no knowledge of the contemplated sale rendered the same basically invalid. *Ross Appeal*, 366 Pa. 100.

. . .

". . . it is ordered, adjudged and decreed as follows:

". . . That the alleged deed from the Tax Claim Bureau of Luzerne County, to the defendant, Albert Breakstone, recorded in the Recorder of Deeds Office in and for Luzerne County, in Deed Book No. 1235, at Page 205, and the alleged quit-claim deed from the defendant, Albert Breakstone, to the defendant, George Albert, recorded in the Recorder of Deed Office in and for Luzerne County, in Deed Book 1236, at page 530, are null and void and of no effect.

". . . That the Recorder of Deeds in and for Luzerne County, note upon the margin of the pages of records of said alleged deeds the entry of this Decree.

"That the respective parties pay their own costs."

Decree affirmed.